UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEIA I. FRY,

               Plaintiff,                     Case No. 2:17-cv-10899
                                               District Judge Sean F. Cox
v.                                       Magistrate Judge Anthony P. Patti

COMMISSIONER OF SOCIAL
SECURITY,

               Defendant.
_____/

## REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR REMAND PURSUANT TO SENTENCE FOUR (DE 14), DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 16) AND REMAND THIS MATTER TO THE COMMISSIONER

**I.**     **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Plaintiff's motion for remand

pursuant to sentence four (DE 14), **DENY** Defendant's motion for summary

judgment (DE 16), **REVERSE** the Commissioner's decision, and **REMAND** this

case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further

consideration consistent with the report below.

**II.**     **REPORT**

       Plaintiff, Leia I. Fry, brings this action under 42 U.S.C. § 405(g) for review

of a final decision of the Commissioner of Social Security ("Commissioner")

denying her application for social security disability insurance (DI) benefits. This

matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for remand pursuant to sentence four (DE 14), the Commissioner's motion for summary judgment (DE 16), Plaintiff's reply brief (DE 17), and the administrative record (DE 11).

### A.   Background

Plaintiff filed her application for DI benefits on May 4, 2014, alleging that she has been disabled since December 31, 2013.  (R. at 140-41.)  Plaintiff's application was denied on September 18, 2014, and she sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  (R. at 88-99.) ALJ Brian Garves held a hearing on February 18, 2016, at which Plaintiff was represented by counsel.  (R. at 32-73.) The ALJ considered all of the evidence and, on March 16, 2016, determined that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 18-27.) On January 31, 2017, the Appeals Council denied Plaintiff's request for review.  (R. at 1-6.) Thus, ALJ Garves's decision became the Commissioner's final decision.

Plaintiff then timely commenced the instant action on March 22, 2017. (DE 1.)

### B.   Plaintiff's Medical History

The administrative record contains approximately 425 pages of medical records (Exhibits 1F through 21F) spanning the period from January 21, 2013

through November 17, 2015, all of which were available to the ALJ at the time of his March 16, 2016 decision.  The medical records include treatment notes from Plaintiffs' treating physicians, including Dr. Ryan Bearer, Dr. Mark Adams, and Dr. Mark Davis (R. at 219-638), and the administrative record also contains a State agency medical consultant's assessment (mental) dated September 17, 2014.  (R. at 78-79.) These records will be discussed in detail, as necessary, below.

### C.     Hearing Testimony

Plaintiff testified at the February 18, 2016 hearing before ALJ Garves.  (R. at 38-67.)  Vocational expert Michelle Ross also provided testimony. (R. at 67-72.) The hearing testimony will be cited as necessary below.

### D.     The Administrative Decision

On March 16, 2016, ALJ Garves issued an "unfavorable" decision.  At **Step 1** of the sequential evaluation process,[1] the ALJ found that Plaintiff has not engaged in substantial gainful activity since December 31, 2013, the alleged onset date.  (R. at 20.) At **Step 2**, the ALJ found that Plaintiff has the following severe impairments:  lumbar and cervical spine disorder, osteoarthritis, thyroid gland disorder and benign essential tremor of the head.  (R. at 20-21.)  At **Step 3**, the ALJ found that Plaintiff does not have an impairment or combination of

---

[1] *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

impairments that meets or medically equals the severity of one of the listed impairments.  (R. at 21-22.) Prior to **Step 4** of the sequential process, the ALJ determined that Plaintiff has the residual functional capacity ("RFC")[2] to:

> perform sedentary work … except she can lift no more than ten pounds and occasionally lift and carry articles, such as docket files, ledgers and small tools.  She can sit for six hours and stand and/or walk for two hours in an eight-hour shift provided she can alternate between sitting and standing every thirty minutes.  She can frequently reach in all directions bilaterally.  She can frequently handle, finger and feel objects bilaterally.  The claimant can occasionally balance, stoop and crouch but can never kneel or crawl.  The claimant must avoid concentrated exposure to excessive vibration.  The claimant can have no exposure to unprotected heights, moving machinery or commercial driving.

(R. at 22-25.) At **Step 4**, the ALJ found that Plaintiff is capable of performing her past relevant work as a customer service representative.  (R. at 25-26.) The ALJ proceeded to make an alternative **Step 5** determination that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  (R. at 26-27.)  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since December 31, 2013, the alleged onset date, through the date of the decision.  (R. at 27.)

### E.    Standard of Review

---

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). "Substantial evidence supports a decision if 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' backs it up." *Biestek v. Comm'r of Soc. Sec*., 880 F.3d 778, 783 (6th Cir. 2017) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of

witnesses, including that of the claimant."); *Richardson*, 402 U.S. at 399 ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.").  Furthermore, the claimant "has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability."  *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *see also Biestek*, 880 F.3d at 783 ("[A] decision supported by substantial evidence must stand, even if we might decide the question differently based on the same evidence.") (citing *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010)).  Finally, even if the ALJ's decision meets the

substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## F.   Analysis

In her motion for remand pursuant to Sentence Four, Plaintiff asserts essentially three claims of error.  First, she contends that the ALJ misrepresented her activities of daily living, resulting in a faulty credibility analysis.  Second, she argues that the ALJ erred when he gave great weight to an "opinion" of Dr. Ryan Bearer, one of her treating physicians, that Plaintiff was on light duty, because that was not his opinion.  And third, she asserts that the ALJ failed to perform a proper treating source analysis for opinions from Plaintiff's treating neurosurgeon, Dr. Mark Adams, and her family physician, Dr. Mark Davis.  (DE 14.)  The Commissioner opposes Plaintiff's motion, asserting that substantial evidence supports the Commissioner's decision.  (DE 16.)  Because I find that the ALJ erred in his evaluation of Plaintiff's treating physicians' opinions, and that this matter should be remanded on that basis, I will not address the merits of Plaintiff's credibility argument.

### 1.   Treating Source Opinion Evidence

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 404.1527(b). The regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Administrative law judges "will consider . . . administrative medical findings and medical evidence from our Federal or State agency medical or psychological consultants . . .[,]" but "are not required to adopt any prior administrative medical findings[.]" 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1).

For claims filed before March 27, 2017, "the Commissioner's regulations establish a hierarchy of acceptable medical source opinions[.]" *Martin v. Colvin*, 207 F.Supp.3d 782, 788 (S.D. Ohio 2016) (quoting *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013)). "In descending order, these medical source opinions are: (1) treaters; (2) examiners; and (3) record reviewers." *Id.*

Under the regulations, a treater's opinion must be given "controlling weight" if "well-supported by medically acceptable clinical and laboratory diagnostic techniques and … not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see LaRiccia v. Comm'r of Soc. Sec.*, 549 F.

App'x 377, 384 (6th Cir. 2013).  The ALJ generally gives deference to the

opinions of a treating source "since these are likely to be the medical professionals

most able to provide a detailed, longitudinal picture of [a patient's] medical

impairment(s) and may bring a unique perspective to the medical evidence that

cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R.

§ 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir.

2009). To qualify as a treating source, the physician must have an "ongoing

treatment relationship" with the claimant.  20 C.F.R. § 404.1502.

    If the ALJ does not afford controlling weight to a treating physician's

opinion, the ALJ must meet certain procedural requirements.[3] *Wilson v. Comm'r of*

*Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give

a treating source's opinion controlling weight:

---

[3] An exception exists for treating source opinions on issues that are reserved to the
Commissioner, which "are never entitled to controlling weight or special
significance."  S.S.R. 96-5p, 61 FR 34471-0, at *34473.  Examples of issues
reserved to the Commissioner include:

> 1. Whether an individual's impairment(s) meets or is equivalent in
> severity to the requirements of any impairment(s) in the listings;
> 2. What an individual's RFC is;
> 3. Whether an individual's RFC prevents him or her from doing past
> relevant work;
> 4. How the vocational factors of age, education, and work experience
> apply; and
> 5. Whether an individual is "disabled" under the Act.

 *Id.*

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.; see also* 20 C.F.R. § 404.1527(c).

However, while an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion," 20 C.F.R. § 416.927(c)(2), and "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight," *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (per curiam) (internal quotation omitted), there is no *per se* rule that requires a written articulation of each of the six regulatory or "*Wilson* factors" listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010). In other words, the regulations do not require "an exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804-05 (6th Cir. 2011) (citing § 404.1527(d)(2)). Nevertheless, the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimant's understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the

agency's decision is applied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544-45.

In essence, "opinions of a treating source … must be analyzed under a two-step process, with care being taken not to conflate the steps." *Cadle v. Comm'r of Soc. Sec.*, No. 5:12 CV 3071, 2013 WL 5173127, at *5 (N.D. Ohio Sept. 12, 2013). Initially, "the opinion must be examined to determine if it is entitled to controlling weight" and "[o]nly if … the ALJ does not give controlling weight to the treating physician's opinion is the opinion subjected to another analysis based on the particulars of" 20 C.F.R. § 404.1527. *Id.*

Moreover, the failure to discuss the requisite factors may constitute harmless error: (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c) ]–the provision of the procedural safeguard of reasons–even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson*, 378 F.3d at 547); *see also, Betty v. Comm'r of Soc. Sec.*,

No. 15-CV-10734, 2016 WL 1105008, at *4 (E.D. Mich. Feb. 17, 2016), *report and recommendation adopted*, 2016 WL 1090554 (E.D. Mich. Mar. 21, 2016).

### 2.   Dr. Bearer's February 2014 "Opinion"

Plaintiff treated with Dr. Ryan Bearer at Matrix Pain Management from at least February 2013 through March 2014 for chronic low back pain and lower extremity pain.  (R. at 237-303.)  Dr. Bearer's treatment included administering six lumbar epidural steroid injections from February 2013 to January 2014, and a diskography at multiple lumbar levels in February 2014.  In the ALJ's analysis of the opinion evidence in this matter, he stated:

> In February 2014, Ryan Bearer, D.O., opined that [t]he claimant was on light duty (1F/11).  I give great weight to the opinion of Dr. Bearer because it is consistent with the medical evidence and the record as a whole.  Moreover, Dr. Bearer is a treating provider of the claimant and as such has intimate knowledge of the claimant's conditions and any limitations they may cause.

(R. at 24.)

However, as Plaintiff correctly argues, and as Defendant expressly concedes in its motion for summary judgment, the ALJ erred in assigning "great weight" to this "opinion," because the brief statement in the "CC/HPI" section[4] of the office progress note cited by the ALJ regarding "light duty" is not at all a "medical opinion" by Dr. Bearer regarding Plaintiff's work capabilities after her disability

---

[4] The Court believes that "CC" stands for chief complaint and "HPI" stands for history of present illness.  *See* https://meded.ucsd.edu/clinicalmed/write.htm.

onset date.  (DE 14 at 12-14; DE 16 at 16-17.)  Indeed, the note stating "[t]he

patient's activities light duty" was first recorded on February 13, 2013 by Nurse

Practitioner Carolyn Wittke in the "CC/HPI" section of Plaintiff's earliest recorded

treatment note with Matrix Pain Management, at which time Plaintiff was still

working.  (R. at 39, 271.)  This notation, and the entire CC/HPI paragraph was

repeated, almost word-for-word, through every subsequent treatment note,

including the February 2014 treatment note incorrectly identified by the ALJ as Dr.

Bearer's "opinion" that Plaintiff "was on light duty."  (R. at 24, 223, 241, 245, 250,

258, 263, 267.)  In fact, Dr. Bearer is identified only as having "approved" the

February 2014 progress note upon which the ALJ relied.  (R. at 229.)  Therefore,

as Defendant concedes, this statement does not constitute an opinion by Dr. Bearer

as to Plaintiff's work capabilities subsequent to her alleged disability onset date of

December 31, 2013, and the ALJ's reliance on it as such was in error.  (DE 16 at

17.)

Defendant contends, however, that this error was harmless, arguing that the

ALJ's RFC assessment is adequately supported by the record, including Dr.

Adams's opinion that Plaintiff could return to work with a ten-pound weight limit

and a sit/stand option, to which the ALJ assigned "great weight."  (DE 16 at 17.)

However, Defendant ignores the fact that the ALJ also expressly relied on Dr.

Bearer's purported "opinion" that Plaintiff "was on light duty" in determining

13

Plaintiff's RFC. (R. at 24.) Indeed, the ALJ expressly relied on Dr. Bearer's so-called "opinion" in giving one of Plaintiff's other long-time treating physicians, Dr. Mark Davis, only "limited weight," finding Dr. Davis's assessment "inconsistent with other findings, including the opinions of Dr. Adams *and Dr. Bearer*." (R. at 25 (emphasis added).) Further, the ALJ also expressly found that the RFC assessment is supported by "the claimant's history of treatment[,] [t]he clinical examination findings and the opinions of Dr. DeLoach [a state agency reviewing psychologist who opined that Plaintiff did not have any severe mental impairments] *and Dr. Bearer*." (R. at 25 (emphasis added).) Defendant does not address these issues and reliances. This misstatement of the record is not harmless error because not only did the ALJ give this "non-opinion" "great weight," he also expressly relied on this "non-opinion" to discount the opinion of Plaintiff's long-time treating family physician and to ultimately support his RFC determination. (R. at 24-25.) The Court cannot speculate as to how the ALJ would have decided this matter if he had not erroneously afforded great weight to Dr. Bearer's "non-opinion," and remand is necessary.

### 3. Dr. Davis's Opinions

Plaintiff treated with Dr. Mark Davis, his family practitioner, from at least January 2013 through October 2015, for conditions including lower back pain radiating to the left leg, neck pain, knee pain, essential tremor, bone spur,

14

degenerative disc disease, and cervical and lumbar radiculopathy.  (R. at 346-88, 442-46, 576-80, 610-38.)  The ALJ found with respect to Dr. Davis that:

> In June 2014, Mark Davis, M.D., opined that [t]he claimant should remain off work due to issues with sitting and standing.  Dr. Davis stated that the claimant could not do anything for any length of time.  However, he added that he was hopeful that the claimant could get some relief with surgery (5F/7).  Dr. Davis also opined that the claimant could not return to work due to severe back pain and could not perform any PC or desk work.  (21F/9).  I give limited weight to the assessment of Dr. Davis because it is inconsistent with other findings, *including the opinions of Dr. Adams and Dr. Bearer.*

(R. at 25 (emphasis added).)

Plaintiff argues that this assessment is not supported by substantial evidence and that the underlying reports of both Dr. Davis and Dr. Mark Adams, Plaintiff's treating neurosurgeon, specifically including Dr. Davis's January 2015 treatment notes in which he observed "painful ROM [range of motion] of the neck and low back with flexion and extension. Positive bilateral leg raising at 15 degrees right buttock.  Neck and lumbar/gluteal vertebral spinous process tenderness to palpation, … [and] [p]ain was observed[;]pain increase[s] while sitting and standing," support Dr. Davis's opinions.  (DE 14 at 16-17, citing R. at 620.)  Defendant contends that the ALJ reasonably found that Dr. Davis's opinion conflicted with Dr. Adams's opinion, along with other findings in the record.  (DE 16 at 19-21.)  Plaintiff replies that Defendant impermissibly conducts a *post hoc* evidentiary analysis to support its argument.  (DE 17 at 5.)

15

### a. The "June 2014 Opinion" cited by the ALJ is not Dr. Davis's opinion

Initially, I note that the June 9, 2014 opinion that the ALJ attributed to Dr. Davis is not Dr. Davis's opinion, but instead is Dr. Davis's recitation of a June 2, 2014 opinion by Dr. Adams, or perhaps by his nurse practitioner.  (See R. at 25, 351-52 (Dr. Davis's treatment note stating "Pt saw Helen Decorte, *Dr. Adams NP*" and reciting what "the note from the[m] stated ….") (emphasis added); R. at 342 (Dr. Adams's June 2, 2014 treatment note).)  Thus, similar to his discussion of Dr. Bearer, the ALJ attributed an opinion to Dr. Davis that was not his opinion at all. Accordingly, the ALJ's ruling discounting this June 2014 opinion (in reality by Dr. Adams's office) because it is "inconsistent with the opinions of Dr. Adams…" does not make sense, and certainly does not serve to discount an opinion by Dr. Davis. Defendant neglects to address this June 2014 opinion in its motion at all, focusing instead solely on the January 2015 opinion also cited by the ALJ (as (21F/9)).  (DE 16 at 15-16, citing R. at 618.)

### b. Dr. Davis's January 2015 Opinion

That leaves the January 2015 opinion by Dr. Davis that Plaintiff "could not return to work due to severe back pain and could not perform any PC or desk work," to which the ALJ gave only limited weight because "it is inconsistent with other findings, including the opinions of Dr. Adams and Dr. Bearer."  (R. at 25, citing R. at 618.)

16

### i.   No "controlling weight" analysis

First, in weighing the opinion evidence of Dr. Davis, the ALJ erred because he did not acknowledge that Dr. Davis is one of Plaintiff's long-time treating physicians, much less mention the concept of "controlling weight" or specifically decline to afford this opinion controlling weight.  (R. at 25.)  *See Gayheart*, 710 F.3d at 377 (finding error where the ALJ's "analysis does not explain to which aspect of the controlling weight test [a] critique is relevant"); *Wilson*, 378 F.3d at 544 (stating that the regulations are designed to "ensure[] that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule"). In addition, the ALJ also provides no analysis of the controlling weight factors—*i.e.*, whether the opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and … not inconsistent with the other substantial evidence[.]"  20 C.F.R. § 404.1527(c)(2). "Such failure is error where the Court cannot determine whether the ALJ undertook the 'two-step inquiry' required when weighing treating source opinions."  *Martin*, 207 F.Supp.3d at 789 (citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376-78 (6th Cir. 2013); *Chrisman v. Colvin*, 531 F. App'x 893, 900 (10th Cir. 2013)).

While such failure can constitute harmless error, in this case, the reasons given for affording Dr. Davis's opinion less than controlling weight—and ultimately "little weight"—are unsupported by substantial evidence. *See Martin*,

207 F.Supp.3d at 789.  The ALJ here gave Dr. Davis's opinion "little weight" based solely on the conclusory statement that "it is inconsistent with other findings, including the opinions of Dr. Adams and Dr. Bearer."  (R. at 25.)  However, the ALJ failed to provide any analysis of the controlling weight factors—*i.e.*, whether the opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and … not inconsistent with other substantial evidence."  20 C.F.R. § 404.1527(c)(2).  The ALJ's perfunctory statement that Dr. Davis's opinion "is inconsistent with other findings, including the opinions of Dr. Adams and Dr. Bearer" "does not explain to which aspect of the controlling-weight test this critique is relevant" which "hinders a meaningful review of whether the ALJ properly applied the treating-physician rule that is at the heart of this regulation." *Gayheart*, 710 F.3d at 376-77.

Indeed, Dr. Davis's January 2015 opinion—that Plaintiff "is not able to return to work due to severe back pain, cannot perform any PC or Desk work at this time"—finds support in Dr. Davis's findings on physical exam that day of "painful ROM of the neck and low back with flexion and extension," "positive bilateral leg raising at 15 degrees right buttock," "[n]eck and lumbar/gluteal vertebral spinous process tenderness to palpation," and "[p]ain was observed[;]

18

pain increase[s] while sitting and standing." (R. at 620.)[5]  However, the ALJ did

not discuss these exam findings in his opinion.  In fact, in his recitation of

Plaintiff's medical history, he only included the positive straight leg-raising test,

and none of Dr. Davis's other positive findings.  (R. at 23.)

Moreover, Dr. Davis's January 2015 opinion is consistent with Dr. Adams's

post-surgery, September 2014 and December 2014 examination findings and

opinions.  (See R. at 458-59, 467-68, 618-20.)  Specifically, on September 19,

2014, Dr. Adams observed on physical examination that Plaintiff had "spinous

process tenderness noted in the lower back L3-S1[,] … bilateral facet tenderness[,]

… limited range of motion of the lumbar spine with pain upon extension, flexion,

[and] right or left rotation[,] … [and] [s]traight-leg raise is positive, sitting bilateral

legs." (R. at 458-59.)  Dr. Adams opined that Plaintiff "will remain off work, she

cannot do any bending, lifting, twisting.  She has a 5 pound weight limit.  She

cannot sit for long period[s] of times [sic].  She needs to be able to have frequent

position changes.  She should not be doing any PC or desk work due to her

---

[5] Defendant argues that the physician's opinion on Plaintiff's ability to work is
entitled to no special significance because it is an issue reserved for the
Commissioner.  (DE 16 at 19 n.10) (citing 20 C.F.R. § 404.1527(d)).  However,
just because a doctor impermissibly opines about a claimant's ability to work does
not mean that the ALJ can cast aside the entirety of the physician's opinion.  *See
Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 461-67 (6th Cir. 2005) (remanding
case because the ALJ failed to give good reasons for dismissing the treating
physician's entire opinion even though the doctor had improperly opined that the
claimant was "totally disabled").

inability to sit for long period[s] of time."  (R. at 459.)  The ALJ fails to even

mention this opinion by Dr. Adams, which is consistent with Dr. Davis's January

2015 opinion.  "When an ALJ fails to mention rejected evidence, 'the reviewing

court cannot tell if significant probative evidence was not credited or simply

ignored,'" and a remand is required.  *Agee v. Comm'r of Soc. Sec.*, No. 3:12-0958,

2017 WL 1164572, at *8 (M.D. Tenn. Mar. 28, 2017) (quoting *Morris v. Sec'y of*

*Health & Human Servs.*, No. 86-5875, 1988 WL 34109 at *2 (6th Cir. Apr. 18,

1988)).

And, on December 28, 2014, Dr. Adams again observed during his physical

examination that Plaintiff had "spinous process tenderness noted in the lower back

L3-S1.  There is bilateral facet tenderness.  There is limited range of motion of the

lumbar spine with pain upon extension, flexion, right or left lateral rotation."  (R.

at 468.)  Dr. Adams then opined that Plaintiff "is truly not any better since her

[June 2014] surgery.  She does feel that PT has helped her somewhat but she is still

i[n] a great deal of pain. She is not able to stay in any position for any length of

time.  I do not feel she will be able to return to work even in a sedentary positions

[sic] due to the fact she has to frequently change positions.  She cannot stay in any

one position for any longer than 15-30 minutes before she has to move."  (R. at

468.)

Just over a week later, on January 7, 2015, Dr. Davis examined Plaintiff and similarly found "painful range of motion with neck ROM and low back flexion and extension.  Positive bilateral leg raising at 15 degrees right buttock.  Neck and lumbar/gluteal vertebral spinous process tenderness to palpation and no mass noted.  Muscle strength and reflexes normal.  Pain was observed[;] pain increase while sitting and standing."  (R. at 620.)  Based on that examination, Dr. Davis opined that Plaintiff "is not able to return to work due to severe back pain, cannot perform any PC or Desk work at this time."  (*Id.*)  This opinion would appear to be based on clinical examination findings and to be consistent with, and supported by, the September and December 2014 opinions of Dr. Adams.  Therefore, the ALJ's failure to conduct a proper controlling weight analysis of Dr. Davis's opinion is not harmless error and requires remand.

### ii.    No application of the *Wilson* factors

Even if the ALJ had properly conducted the "controlling weight" analysis above, as he was required to do, he was still required to apply the regulatory (or *Wilson*) factors and give "good reasons" for giving only "limited weight" to Dr. Davis's January 2015 opinion.  This is so because even when "controlling weight" is not given, under the regulations then in force, the opinions of a treating physician were still entitled to "substantial deference or some weight."  *See Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192-93 (6th Cir. 2009); *see*

*also* SSR 96-2p ("A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator.").  A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996).  "[I]t is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; *there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusions that gets the short end of the stick*."  *Friend*, 375 F. App'x at 552 (emphasis added); *see id.* at 551 ("This is not 'sufficiently specific' to meet the requirements of the rule on its face, inasmuch as it neither identifies the 'objective clinical findings' at issue nor discusses their inconsistency with Dr. Angerman's opinion.").  Thus, "[e]ven when inconsistent with other evidence, a treating source's medical opinions remain entitled to deference and must be weighed using the factors provided in 20 C.F.R. §§ 404.1527 and 416.927." *Id.* at 552.

Here, the single sentence that Dr. Davis's opinion is "inconsistent with other findings, including the opinions of Dr. Adams and Dr. Bearer" falls short of the

agency's procedural requirements because it does not discuss any of the other §

1527(c) factors or otherwise assess the weight given to Dr. Davis's opinion in light

of those factors.  Dr. Davis has been Plaintiff's treating family physician since at

least January 2013, and has treated her continuously through at least October 2015.

(R. at 356-99, 442-46, 576-80, 610-38.)   However, nowhere in the opinion does

the ALJ indicate that he considered the length of the treatment relationship in

determining what weight to give to the opinion of Dr. Davis.  The ALJ does not

mention the frequency of the examination, the extent of the treatment relationship,

or whether Dr. Davis is specialized in any way.  Moreover, as explained above, Dr.

Bearer's "opinion" is not a medical opinion at all, much less one that should be

afforded "great weight," and the ALJ erred in relying on this "opinion" to discount

Dr. Davis's opinion.

　　　　Further, the ALJ fails to explain the "other findings" with which Dr. Davis's

opinion is inconsistent.  As Plaintiff points out in her brief, and as discussed above,

Dr. Davis's January 7, 2015 opinion is supported by his physical examination

findings that day, as well as his earlier examination findings. In addition, this

opinion is consistent with Dr. Adams's September and December 2014

examination finding and opinions, the latter of which was in the prior month.  The

ALJ may not cherry-pick isolated examination findings to reject a treating

physician's opinion.  *See Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 435

(6th Cir. 2013) ("the ALJ cherry-picked select portions of the medical record to discredit Minor's complaints of pain") (citing *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (per curiam) (noting the ALJ impermissibly "was selective in parsing the various medical reports"); *Boulis-Gasche v. Comm'r of Soc. Sec.*, 451 F. App'x 488, 494 (6th Cir. 2011) (noting ALJ's conclusion was "grounded in a myopic reading of the record combined with a flawed view of mental illness")). For example, the ALJ only noted that Plaintiff "had a positive straight leg raising test in September 2014" (R. at 23, citing R. at 459), but neglected to include that in that same examination, Dr. Adams also noted "[t]here is spinous process tenderness noted in the lower back L3-S1. There is bilateral tenderness. There is limited range of motion of the lumbar spine with pain upon extension, flexion, right or left lateral rotation." (R. at 458-59.) Similarly, the ALJ noted that in January 2015 Plaintiff "had a positive straight leg-raising test on the right, but had normal coordination." (R. at 23, citing R. at 618-20.) However, the ALJ failed to include that Dr. Davis also noted "painful range of motion with neck ROM and low back flexion and extension," and that "[p]ain was observed[;] pain increase while sitting and standing," all relevant findings to Plaintiff's severe impairments. (R. at 620.)

Defendant offers findings it contends could support the ALJ's assignment of "limited weight" to Dr. Davis's opinion. (DE 16 at 20.) However, the Court "may

24

not accept appellate counsel's post hoc rationalizations for agency action. It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Berryhill v. Shalala*, No. 92-5876, 4 F.3d 993, 1993 WL 361792, at *6 (6th Cir. Sept. 16, 1993); *Hyatt Corp. v. N.L.R.B.*, 939 F.2d 361, 367 (6th Cir. 1991) ("Courts are not at liberty to speculate on the basis of an administrative agency's order…. The court is not free to accept 'appellate counsel's post hoc rationalization for agency action in lieu of reasons and findings enunciated by the Board.'"). "[T]he requisite evidence and analysis must appear in the ALJ's decision, not simply be present in the rest of the record." *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 753 (6th Cir. 2011).

I find that the ALJ failed to give "good reasons" for the weight given to Dr. Davis's opinion and the reasons for that weight. *See Gayheart*, 710 F.3d at 379-80. Remand is therefore required on this basis as well. *Wilson*, 378 F.3d at 546.

### iii. This error was not harmless

As explained above, failure to properly apply the *Wilson* factors can constitute harmless error only if: (1) Dr. Davis's opinion "is so patently deficient that the Commissioner could not possibly credit it;" (2) the Commissioner adopts the opinion; or, (3) where the ALJ has otherwise met the regulation's goal. *See Nelson*, 195 F. App'x at 470. However, I find that Dr. Davis's opinion, based on his long treatment history with Plaintiff, is not "patently deficient," and certainly

was not adopted by the Commissioner.  Further, I find, for the reasons set forth above, that the reasons given in declining to afford Dr. Davis's opinion controlling weight—and in fact giving it only "limited weight"—are unsupported by substantial evidence, and the ALJ has not met the goals of § 1527(d)(2), as the ALJ's opinion does not sufficiently explain why he decided to give only "limited weight" to Dr. Davis's opinion.

Here, Defendant's explanation of the ALJ's *potential* reasons for discounting Dr. Davis's opinion is insufficient, because it was up to the ALJ to provide the explanation in his opinion.  "It is not … the district court's role, to scour the record for evidence and expert reasoning which the ALJ *might* have relied on and which *could* support a finding of no-disability *if* the ALJ actually considered it."  *Karger*, 414 F. App'x at 754.  The Sixth Circuit "has even said that an ALJ's failure to identify the reasons for discounting treating-source opinions (if any were discounted) and to explain 'precisely how those reasons affected the weight accorded the opinion *denotes a lack of substantial evidence*, even where the conclusion of the ALJ may be justified based upon the record."  *Rogers*, 486 F3d at 243 (emphasis added).

Based upon all the above, I find that the ALJ's analysis of Dr. Davis's opinion does not meet the procedural requirements of 20 C.F.R. § 404.1527, his decision is not supported by substantial evidence, and remand is required for

further consideration of Dr. Davis's opinions. If the ALJ choses to discount the opinion, he or she must address those reasons in the opinion, consistent with the Regulations. 20 C.F.R. 404.1527. It is not within this Court's authority to reweigh the evidence, much less speculate on what weight would have been given (and why) with respect to a treating physician's opinion.

### 4. Dr. Adams's Opinions

Plaintiff treated with Dr. Mark Adams, a neurosurgeon, for lumbar pain beginning in March 2014 through December 2014. (R. at 320-45, 409-11, 456-70.) The ALJ found with regard to Dr. Adams that:

> In April 2014, Mark Adams, M.D., opined that the claimant could return to work with a ten pound weight limit and no bending, lifting or twisting. Dr. Adams added that the claimant should have the option to sit or stand at will (4F/18). I give great weight to the opinion of Dr. Davis [sic][6] because it is consistent with the medical evidence, including his own clinical examination findings. Moreover, he is a treating provider of the claimant and as such has intimate knowledge of the claimant's condition and any limitations they may cause.
>
> In December 2014, Dr. Adams noted that the claimant was not truly any better after surgery and that she could not stay in any one position for longer than fifteen to thirty minutes before needing to move (12F/14). I give limited weight to this assessment from Dr. Adams because it is based on the claimant's subjective complaints, not his examination findings.

---

[6] Plaintiff contends that it is not clear whether the ALJ intended to give "great weight" to the opinion of Dr. Adams or Dr. Davis here. (DE 14 at 14-15.) However, as Defendants explain, this was an obvious scrivener's error, and the ALJ meant to discuss Dr. Adams's opinion and not Dr. Davis's, which he separately addressed on the next page of his opinion. (R. at 24-25.)

(R. at 24.)

Leaving aside Plaintiff's argument that the ALJ failed to incorporate into the RFC Dr. Adams's limitation of "no bending, lifting or twisting" – an oddity which should also be examined on remand, in light of the fact that the ALJ gave "great weight" to this portion of the opinion – the ALJ's analysis of Dr. Adams's opinions is deficient for numerous other reasons.  First, although the ALJ noted that Dr. Adams was a treating physician, "and as such has intimate knowledge of the claimant's conditions and any limitations they may cause[,]" he failed to mention the concept of "controlling weight" or specifically decline to afford Dr. Adams's opinions controlling weight.  *See Gayheart*, 710 F.3d at 377.  Second, as discussed above, the ALJ wholly failed to address Dr. Adams's September 2014 more restrictive opinion following Plaintiff's surgery, in which he opined that Plaintiff "will remain off work, she cannot do any bending, lifting, twisting.  She has a 5 pound weight imit.  She cannot sit for long period[s] of times [sic].  She needs to be able to have frequent position changes.  She should not be doing any PC or desk work due to her inability to sit for long period[s] of time."  (R. at 459.)  This was error.  20 C.F.R. § 404.1527(b) (the ALJ "will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive"); *id.* § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive.").  Third, the ALJ failed address Dr. Adams's

specialization as a neurosurgeon, or the length, frequency, or nature and extent of

the treatment relationship, when affording his December 2014 opinion only limited

weight. *See Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(c). Fourth, the ALJ's

cursory statement that he gives Dr. Adams's most recent opinion in December

2014 only limited weight because "it is based on the claimant's subjective

complaints, not his examination findings" is simply incorrect. Dr. Adams

examined Plaintiff throughout his treatment of her, and included numerous

physical examination findings in support of his opinion, including finding spinous

process tenderness in the lower back L3-S1, bilateral facet tenderness, limited

range of motion of the lumbar spine with extension, flexion, right or left rotation,

and that diagnostic testing revealed lumbar disc herniation with radiculopathy. (R.

at 468.) Thus, while Dr. Adams does properly note Plaintiff's subjective

complaints in his treatment notes, the ALJ provides no basis for his decree that Dr.

Adams's December 2014 opinion is based on Plaintiff's subjective complaints

alone and not on his examination findings that day, as well as throughout his

treatment of her. Yet again, the ALJ appears to have engaged in cherry-picking.

The Sixth Circuit "has made clear that '[i]t do[es] not hesitate to remand

when the Commissioner has not provided good reasons for the weight given to a

treating physician's opinion and [the Sixth Circuit] will continue remanding when

[it] encounter[s] opinions from ALJs that do not comprehensively set forth the

reasons for the weight assigned to a treating physician's opinion.'" *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) (quoting *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009) (citation and internal quotation marks omitted)). Here, the ALJ failed to appropriately and fully apply the proper legal standards to Plaintiff's case, and the case should be remanded for further consideration.

### 5.    Remand under Sentence Four

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir.1994) (citing 42 U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing."  42 U.S.C. § 405(g).  Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue,* 10–207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher,* 17 F.3d at 174); *see also White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 790 (6th Cir. 2009) ("If a

court determines that substantial evidence does not support the [Commissioner's] decision, the court can reverse the decision and immediately award benefits only if all factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." (internal quotations omitted)).  Here, the ALJ's weighing of Dr. Bearer's "opinion," and his evaluation of Dr. Davis's and Dr. Adams' opinions do not meet the procedural requirements of 20 C.F.R. § 404.1527.  Accordingly, I recommend that the Court remand this case under Sentence Four.  *See Cole*, 661 F.3d at 939 (The Sixth Circuit "has made clear that [it] do[es] not hesitate to remand when the Commissioner has not provided good reasons for the weight given to a treating physician's opinion and [the Sixth Circuit] will continue remanding when [it] encounters opinions from ALJs that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.").

### G.   Conclusion

Due to the errors outlined above, Plaintiff is entitled to an order remanding this case to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g).  Accordingly, the Undersigned **RECOMMENDS** that the Court **GRANT** Plaintiff's motion for remand pursuant to sentence four (DE 14), **DENY** Defendant's motion for summary judgment (DE 16), **REVERSE** the Commissioner's decision, and **REMAND** this case to the Commissioner and the

ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.


Dated: July 20, 2018                         s/Anthony P. Patti
                                             Anthony P. Patti
                                             UNITED STATES MAGISTRATE JUDGE


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of
record and any unrepresented parties via the Court's ECF System to their
respective email or First Class U.S. mail addresses disclosed on the Notice of
Electronic Filing on July 20, 2018.

                                              s/Sandra Osorio
                                             Acting Case Manager for
                                             Magistrate Judge Anthony P. Patti